# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 26, 2007

## STATE OF TENNESSEE v. TYMETRIC LEJUAN GRAHAM

**Appeal from the Criminal Court for Hamilton County**
**No. 252471    Douglas A. Meyer, Judge**

---

**No. E2006-02502-CCA-R3-CD - Filed March 4, 2008**

---

The defendant, Tymetric Lejuan Graham, was convicted of aggravated robbery, a Class B felony, and was sentenced to twelve years as a Range I, standard offender. On appeal, he argues that his indictment charged attempted aggravated robbery only and that, therefore, the trial court erred in submitting the charge of aggravated robbery to the jury. We agree and reverse the judgment of the trial court. We remand for entry of a conviction and sentence for attempted aggravated robbery.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Mike A. Little, Chattanooga, Tennessee, for the appellant, Tymetric Lejuan Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William H. Cox, III, District Attorney General; and Lila Jayne Statom and Leslie Anne Longshore, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to the robbery of a Buffalo Wild Wings restaurant in Chattanooga. The defendant was charged in connection to the robbery. The evidence presented at trial proved that on September 6, 2004, two masked men, one brandishing a gun, stole $822 from the restaurant's safe. The manager on duty at the time, Ryan Selzer, testified that while he was taking out the trash, he opened the back door to find two men standing outside the door. He said that he saw their faces but that the men quickly covered their faces with bandanas. He said one of the men pointed a gun at him and directed him to the office where the safe was located. Two other employees were in the office and testified that the man carrying the gun ordered that they give him the money from the safe. An employee filled a burlap sack with all the bills that were in the safe and gave the sack to the man

carrying the gun. The two men then left the restaurant. Mr. Selzer later identified the defendant as the gunman from a photographic line-up. One of the employees also testified that the robber with the gun had a tattoo on his arm in the shape of flames. Evidence showed that the defendant had a tattoo on his arm that included flames.

The defendant's former girlfriend testified that she worked at Buffalo Wild Wings around the time of the robbery. She said that a few days before the robbery, the defendant asked her about the security guards at the restaurant. She also testified that the defendant did not work but that, sometime after the robbery, he seemed to have a large amount of money and bought new clothes, shoes, and jewelry. On September 10, 2004, the defendant had $380 in cash on his person and was with a companion who had $1355 in cash.

The defendant did not testify or present evidence at the trial. In the defendant's opening statement and closing argument, he did not deny that a robbery occurred, but he did deny that the evidence proved his identity as an assailant.

At issue in this case is what offense was charged by the indictment and whether the trial court erred by submitting to the jury a charge that was not encompassed by the indictment. Although the indictment is styled on its cover page as a true bill for the crime of "aggravated robbery," T.C.A. § 39-13-402, the language of the indictment describes the defendant's offense as follows:

> Tymetric Lejuan Graham heretofore on September 6, 2004, in [Hamilton County], did unlawfully and intentionally or knowingly attempt to take property from the person of Ryan Selzer, the property of Buffalo Wild Wings, by violence or putting the victim in fear, and the defendant accomplished the offense with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon, in violation of Tennessee Code Annotated 39-13-402, against the peace and dignity of the State.

(emphasis added). At the beginning of trial, the court informed the defendant and the jury that the defendant was on trial for aggravated robbery. However, after the second witness, Mr. Selzer, testified, the following exchange occurred out of the presence of the jury:

| THE COURT: | He is charged with attempt[ed] armed robbery, not armed robbery. |
| [PROSECUTOR]: | There's a mistake in the indictment. . . . |
| [DEFENSE COUNSEL]: | It looks like we're on trial for attempt. |
| THE COURT: | Hmm? |
| [DEFENSE COUNSEL]: | We're on trial for attempt. |
| THE COURT: | Yeah. |

[PROSECUTOR]:          There's a mistake in the indictment.
THE COURT:             Does he wish to settle all his cases?

The defendant then rejected a state plea offer involving his pleading guilty to attempted aggravated robbery, a Class C felony, and the trial resumed. Later, the trial court addressed the prosecutor and defense counsel regarding jury instructions and informed them that it would only submit to the jury the charges of attempted aggravated robbery and attempted robbery. After the close of the proof, the state offered a closing argument, during which it explained to the jury,

> The crime charged is an aggravated robbery. The crime described [in the indictment] is an attempted aggravated robbery.
>
> . . . .
>
> It would be unfair to put this defendant on trial for an aggravated robbery if his notice is of an attempt[ed] aggravated robbery. So the State will not be allowed, cannot be allowed to charge him with the aggravated robbery or to ask you to come back with a guilty verdict on an aggravated robbery.
>
> However, we can and we intend to show you how our proof not only fits an aggravated robbery, but also an attempted aggravated robbery, and that is a crime that you can find the defendant guilty of.

After arguments, the court gave the jury instructions, which included the charges of attempted aggravated robbery and attempted robbery only. After the instructions, the trial recessed for lunch, and the state asked the court to instruct the jury on the charge of aggravated robbery, arguing that despite the typographical error in the indictment, the defendant was on notice that he was charged with aggravated robbery. The court agreed to charge aggravated robbery, stating,

> I really believe that, that the indictment is controlled by what's in the . . . body of it, so I think that obviously it has to be an attempt, but I'm going to change the charge, since the State cannot appeal, and I'm going to allow the jury to consider aggravated robbery, even though, as I say, I'm positive that it can't, so I'll let the Court of Appeals correct it.
>
> But what I will charge is aggravated robbery, attempt[ed] aggravated robbery, robbery and attempt to commit robbery, so I will go ahead and charge those.
>
> . . . .

What I'm doing, I'm inviting the Court of Appeals to, to tell me I'm wrong; otherwise, if they tell me I'm right, then he can be convicted of aggravated robbery.

When the jury returned from lunch, the trial court instructed them that

[t]he indictment contains the word "attempt," and the language in the body of the indictment controls, but I'm going to allow you to consider whether or not the defendant was guilty of aggravated robbery or attempt[ed] aggravated robbery or robbery or attempt[ed] robbery.

The jury returned a verdict of guilty of aggravated robbery.

In this appeal, the defendant contends that the trial court erred in allowing the charge of aggravated robbery to be considered by the jury and that, therefore, his aggravated robbery conviction is invalid. The state counters that the trial court erroneously allowed the state to amend the indictment after jeopardy had attached but that the error was harmless. The state argues, specifically, that the defendant was on notice of an aggravated robbery charge and that the error did not affect the defendant's trial strategy, as his defense was based on identity and he never questioned that a robbery occurred.

Both the United States and Tennessee constitutions guarantee an accused "the right to be informed of the nature and cause of the accusation." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997) (citing U.S. Const. amend. VI, XIV; Tenn. Const. art. I, § 9). In Hill, our supreme court held that "an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." Id. The indictment must also state the facts constituting the offense "in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty, which will enable the court, on conviction, to pronounce the proper judgment." T.C.A. § 40-13-202. A defendant cannot be convicted of an offense not charged in the indictment or other charging instrument. See State v. Trusty, 919 S.W.2d 305, 314 (Tenn. 1996), overruled on other grounds by State v. Burns, 6 S.W.3d 453 (Tenn. 1999).

In the present case, to determine whether the trial court properly instructed the jury to consider the charge of aggravated robbery, we must determine whether the indictment charges that offense. We hold that it does not. Whether by mistake or not, the offense described by the indictment is attempted aggravated robbery. The state cites cases which have stated that an indictment's "specific reference to a statute may be sufficient to provide an accused notice of the charged offense." State v. Sledge, 15 S.W.3d 93, 95 (Tenn. 2000) (citing State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999); Ruff v. State, 978 S.W.2d 95 (Tenn. 1998)). However, in holding that the indictments at issue were sufficient, those cases rely on the statutory citation combined with

the language in the body of the indictment.  Id.; see also Ruff, 978 S.W.2d at 100 ("[W]here the constitutional and statutory requirements outlined in Hill are met, an indictment which cites the pertinent statute and uses its language will be sufficient to support a conviction.") (emphasis added); State v. Joe David Sloan, No. W2000-02861-CCA-R3-CD, Madison County, slip op. at 5-6 (Tenn. Crim. App. Jan. 4, 2002).  Furthermore, that the indictment cited the aggravated robbery statute does not make it sufficiently clear that the charge is aggravated robbery, instead of attempted aggravated robbery, because aggravated robbery is the underlying offense at issue in the attempt charge.  In other words, an indictment for attempt normally cites the statute of the underlying offense.

We note that the record indicates that until the trial court raised during the trial the issue of the attempt language in the indictment, both the state and the defendant apparently operated under the assumption that the indicted charge was aggravated robbery.  However, what the defendant actually believed he was charged with is irrelevant if the indictment does not provide authority for a conviction on that charge.  In Joe David Sloan, this court, upon plain error review, held that the conviction following a jury trial of felony evading arrest was not valid when the indictment was only sufficient to charge misdemeanor evading arrest.  In that case, neither the parties to the case nor the trial court apparently realized the insufficiency of the indictment, and all proceeded upon the assumption that the charged offense was felony evading arrest.  Regardless of this, and regardless of the fact that the evidence at trial supported a felony evading arrest conviction, this court reversed that conviction because "it is . . . clear that a defendant cannot be convicted of an offense not charged in the indictment."  Joe David Sloan, slip op. at 5.  The same is true in the present case; because the indictment, by its language, charged attempted aggravated robbery, the defendant cannot be convicted of aggravated robbery, an offense not contained within the indictment.

On appeal, the state characterizes the actions of the trial court as allowing an amendment to the indictment, which, although erroneous, was not harmful to the defendant.  Regarding this contention, we first note that it is not clear from the record that the trial court was allowing the state to amend the indictment rather than charging the jury on aggravated robbery under the assumption that the original indictment supported that charge, as the state argued it did.  Second, as the state concedes, any amendment to the indictment at that stage of the proceedings, after the state and defendant had completed their trial proof and made their closing arguments and just before jury deliberations, was improper.  Rule 7(b) of the Tennessee Rules of Criminal Procedure allows an indictment to be amended at any time with the defendant's consent or, if without the defendant's consent, before jeopardy attaches and only if "no additional or different offense is charged and no substantial right of the defendant is prejudiced."  In this case, amending the indictment after jeopardy attached to allow a new charge violated this rule.  Finally, we reject the state's assertion that the error was harmless because it did not affect the result of the trial.  The state argues that the defendant was sufficiently notified of an aggravated robbery charge and prepared his defense to this charge.  However, as we explained, the indictment did not sufficiently charge aggravated robbery, despite the defendant's subjective assumptions and belief that it did.  Moreover, the fact that the defendant's trial strategy was not affected is not significant.  The defendant was prejudiced by the trial court's error to allow the jury to consider the charge of aggravated robbery because, as a result, he was convicted of a crime for which he was not charged.

-5-

Based on the foregoing and the record as a whole, we conclude that the trial court erred in allowing the jury to consider the charge of aggravated robbery. Because the indictment charged the defendant with attempted aggravated robbery, we reverse the conviction of aggravated robbery. We reduce the conviction to attempted aggravated robbery, a Class C felony, and remand the case for a new sentence for this conviction.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE